GailAnn Y. Stargardter (Bar No. 250749)
gstargardter@mvjllp.com
MOKRI VANIS & JONES, LLP
4100 Newport Place, Suite 840
Newport Beach, California 92660
Telephone:    949.226.7040
Facsimile:    949.226.7150

Attorneys for Plaintiff
ATAIN SPECIALTY INSURANCE
COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan Corporation<br><br>Plaintiff,<br><br>v.<br><br>JKT ASSOCIATES, INC., a California domestic stock corporation; ELIZABETH CHRISTENSEN, an individual; RICHARD MEESE, an individual; LORA EICHNER BLANUSA, M.D., an individual; KRISTI SYNEK, an individual; HIDDEN HILLS OWNERS' ASSOCIATION, a California business entity, form unknown; and Does 1 through 50, inclusive,<br><br>Defendant. | Case No. 3:19-cv-7588-SK<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[*filed concurrently with Request for Judicial Notice and Exhibits attached thereto, the Declaration of Amy L. Felder and Exhibits attached thereto and [Proposed] Order*]<br><br>DATE:        June 22, 2020<br>TIME:        9:30 a.m.<br>CRTRM:     C, 15th Floor |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT, ALL INTERESTED PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **June 22, 2020**, at 9:30 a.m., or as soon thereafter as the

matter may be heard in Courtroom C, located at 450 Golden Gate Avenue, 15th Floor, San

Francisco, California 94102, Plaintiff ATAIN SPECIALTY INSURANCE COMPANY ("Atain")

will, and hereby does, move this Court for an order granting summary judgment in its favor on its

Complaint for Declaratory Relief and all causes of action therein.

This motion is made on the grounds that, as a matter of law, under the terms of the liability

insurance policies at issue, specifically under the terms of the Subsidence Exclusion and Professional Services Exclusion contained therein, Atain does not and never had a duty to defend or duty to indemnify its insured, JKT Associates, Inc., against the pre-suit claims asserted by Elizabeth Christensen, Richard Meese, Lora Eichner-Blanusa, M.D., Kristi Synek, or Hidden Hills Owners' Association or the claims asserted in the subsequent lawsuits filed by Meese and Christensen; and Synek seeking damages as a result of a landslide alleged to have been caused by JKT Associates Inc.'s performance of landscaping services. In the absence of coverage under the policies issued by it to JKT Associates, Inc., Atain is entitled to a judicial declaration that it has no duty to defend or indemnify JKT Associates, Inc. against these claims, as a matter of law. Atain is also entitled to a judicial declaration that it may withdraw from the defense of JKT Associates, Inc. and seek reimbursement of all defense fees and costs incurred by it.

Atain's motion will be, and is, made pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56.1, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Exhibits thereto, the Declaration of Amy L. Felder and the Exhibits attached thereto, each of which is filed concurrently herewith, and on all such further evidence, documents and argument as may be presented to the Court at or before the hearing on this motion.

Dated:  May 12, 2020                    MOKRI VANIS & JONES, LLP

                                        /s/ *GailAnn Y. Stargardter*
                                        GailAnn Y. Stargardter
                                        Attorneys for Plaintiff ATAIN SPECIALTY
                                        INSURANCE COMPANY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION..................................................................................... 1

TABLE OF CONTENTS .........................................................................................................i

TABLE OF AUTHORITIES.................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES............................................................. 1

I.      INTRODUCTION AND RELIEF REQUESTED ........................................................ 1

II.     UNDISPUTED FACTS ............................................................................................ 2

        A.    JKT Performs Landscaping Services At 1213 Tall Grass Court ............................ 2

        B.    Changes In Ownership Of 1213 Tall Grass Court And 1207 Tall Grass Court ...................... 2

        C.    The Landslide ................................................................................................ 3

        D.    JKT Is Notified Of Potential Claims Arising From The Landscaping Services It Performed At 1213 Tall Grass .................................................................................................. 3

        E.    JKT Tenders Defense To Atain And Atain Responds ........................................... 4

        F.    The Lawsuits .................................................................................................. 4

        G.    The Atain Policies .......................................................................................... 4

III.    LEGAL ARGUMENT ............................................................................................. 8

        A.    Summary Judgment Is Appropriate Because The Material Facts Are Undisputed And The Interpretation Of The Atain Policies Is An Issue Of Law ..................................... 8

        B.    Atain's Duty To Defend Although Broad, Is Not Unlimited ................................... 9

        C.    The Rules For Interpreting Insurance Policies ................................................... 10

              1.    The Policies Must Be Given Their Plain Meaning ....................................... 10

              2.    The Court Must First Determine Whether The Policy Terms Are Ambiguous ............. 10

              3.    Only If The Court Finds The Policy Terms To Be Ambiguous Will The Policy Be Interpreted To Comport With The Insured's Objectively Reasonable Expectations ................ 11

        D.    As A Matter Of Law, Atain Has No Duty To Defend Or Indemnify JKT ............................ 12

              1.    JKT Has Met Its Burden Of Proving The Claims Fall Within The Scope Of The Coverage A Insuring Agreement ............................................................... 12

              2.    The Claims Asserted Against JKT Do Not Fall Within The Scope Of The Coverage B Insuring Agreement ........................................................................... 12

              3.    Atain Has Met Its Burden Of Proving All Potential For Coverage For The Claims Asserted Against JKT Is Excluded, As A Matter Of Law ....................................... 13

                    a.    The Subsidence Exclusion Removes All Potential For Coverage For The Claims Asserted Against JKT, As A Matter Of Law ......................................... 13

1

2

b.      The Professional Services Exclusion Removes All Potential For Coverage For The Claims Asserted Against JKT, As A Matter Of Law ............................................................. 19

IV.      CONCLUSION ......................................................................................................... 22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Acceptance Ins. Co. v. Syufy Enters.*,
  69 Cal.App.4th 321 (1999).................................................................................. 16

4
*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) ........................................................................................... 8

5
*AIU Ins. Co v. Super. Ct.*,
  51 Cal.3d 807 (1990)........................................................................................... 10

6

7
*Albert v. Truck Ins. Exchange*,
  23 Cal.App.5th 367 (2018)................................................................................... 12

8
*Amex Assurance Co. v. Allstate Ins. Co.*,
  112 Cal.App.4th 1246 (2003) ......................................................................... 19, 20

9
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 8

10
*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  352 F.Supp.2d 1119 (C.D. Cal. 2005) .................................................................. 8

11

12
*Atain Specialty Ins. Co. v. Szetela*,
  2016 U.S. Dist. LEXIS 38059, 2016 WL 1138139 (E. D. Cal. 2016) ............... 19, 21

13
*Atlantic Mut. Ins. Co. v. Ruiz*,
  123 Cal.App.4th 1197 (2004)............................................................................... 11

14
*Baker v. Nat'l Interstate Ins. Co.*,
  180 Cal.App.4th 1319 (2009)...................................................................... 10, 11, 12

15
*Bank of the West v. Super. Ct.*,
  2 Cal.4th 1254 (1992)........................................................................................... 10

16

17
*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
  5 Cal.4th 854 (1993)............................................................................................. 11

18
*California v. Campbell*,
  138 F.3d 772 (9th Cir. 1998) ............................................................................... 8

19
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................... 8

20
*City of Carlsbad v Ins. Co. of State of Pennsylvania*,
  180 Cal.App.4th 176 (2009)........................................................... 13, 14, 15, 16, 18, 19

21

22
*City of Fullerton v. Ins. Co. of the Pa.*, SACV 13-00926-CJC(RNBx),
  2014 U.S. Dist. LEXIS 194718 (C.D. Cal. 2014) ...................................... 15, 16, 17, 18, 19

23
*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
  176 Cal.App.3d 598 (1986)................................................................................... 9

24
*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
  32 Cal.4th 465 (2004)........................................................................................... 10

25
*Emplrs. Ins. Co. v. Lexington Ins. Co.*,
  U.S. Dist. LEXIS 115747 (C.D. Cal. 2014) .................................................. 17, 18, 19

26

27
*Energy Insurance Mutual Limited v. Ace American Insurance Company*,
  14 Cal.App.5th 281 (2017)............................................................................... 19, 20

28
*Fire Ins. Exch. v. Abbott*,
  204 Cal.App.3d 1012 (1988)................................................................................. 9

*Fire Ins. Exch. v. Super. Ct.*,
116 Cal.App.4th 446 (2004) ........................................................................ 10

*Food Pro Internat., Inc. v. Farmer Ins. Exch.*,
159 Cal.App.4th 975 (2008) ........................................................................ 21

*Gray v. Zurich Ins. Co.*,
65 Cal.2d. 263 (1965) .................................................................................... 9

*Hollingsworth v. Commercial Union Ins. Co.*,
208 Cal.App.3d 800 (1989) .................................................................. 19, 20

*Jon Davler, Inc. v. Arch Ins. Co.*,
229 Cal.App.4th 1025 (2014) ...................................................................... 11

*Julian v. Hartford Underwriters Ins. Co.*,
35 Cal.4th 747 (2005) .................................................................................. 15

*La Jolla Beach & Tennis Club v. Indus. Indem. Co.*,
9 Cal.4th 27 (1994) ........................................................................................ 9

*Legarra v. Federated Mutual Ins. Co.*,
35 Cal.App.4th 1472 (1995) ........................................................................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................................ 8

*Montrose Chem. Corp. v. Super. Ct.*,
6 Cal.4th 287 (1993) ................................................................................. 9, 10

*Nissel v. Certain Underwriters at Lloyd's of London*,
62 Cal.App.4th 1103 (1998) ........................................................................ 12

*Pepper Industries, Inc. v. Home Ins. Co.*,
67 Cal.App.3d 1012 (1977) ............................................................................ 8

*Powerine Oil Co. v. Super. Ct.*,
37 Cal.4th 377 (2005) .................................................................................. 11

*Prince v. United Nat. Ins. Co.*,
142 Cal.App.4th 233 (2006) ........................................................................ 15

*Romano v. Mercury Ins. Co.*,
128 Cal.App.4th 1333 (2005) ...................................................................... 10

*Rosen v. E.C. Losch, Inc.*,
234 Cal.App.2d 324 (1965) .......................................................................... 11

*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*,
111 Cal.App.4th 1234 (2003) ................................................................. 11, 12

*State Farm Fire & Cas. Co. v. Eddy*,
218 Cal.App.3d 958 (1990) ............................................................................ 8

*State of California v. Allstate Ins. Co.*,
45 Cal.4th 1008 (2009) ................................................................................ 10

*Sterling Builders, Inc. v. United Nat'l Ins. Co.*,
79 Cal.App.4th 105 (2000) .......................................................................... 12

*Stone v. Hartford Casualty Co.*,
470 F.Supp.2d 1088 (C.D. Cal. 2006) .................................................... 20, 21

*Tradewinds Escrow, Inc. v. Truck Ins. Exchange*,
97 Cal.App.4th 704 (2002) .......................................................................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*USF v. Clarendon Am. Ins. Co.*,
  452 F.Supp.2d 972 (C.D. Cal. 2006)............................................................................................. 9

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal.4th 1 (1995)............................................................................................... 8, 9, 11

*Watts Indus. Inc. v. Zurich Am. Ins. Co.*,
  121 Cal.App.4th 1029 (2004)............................................................................................. 9, 10

**Other Authorities**

Croskey, *et al.*, Cal. Prac. Guide: Insurance Litigation, ¶ 4.5 (The Rutter Group 2009) ................. 10

**Rules**

Federal Rules of Civil Procedure, rule 56(a) ....................................................................................... 8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.       INTRODUCTION AND RELIEF REQUESTED**

3

This is an insurance coverage dispute between Atain Specialty Insurance Company

4

("Atain") and JKT Associates, Inc. ("JKT"). Atain issued two commercial general liability policies

5

to JKT during the relevant time period. Both policies exclude coverage for a "suit" or liability

6

arising out of "earth movement," whether or not the "earth movement" arises out of any operations

7

by or on behalf of JKT. ("Subsidence Exclusion.") Both policies also exclude coverage for "suits"

8

or liability arising out of any claim involving the rendering or failure to render any professional

9

service. ("Professional Services Exclusion.")

10

In August of 2019, JKT was placed on notice that the individual property owners—Meese

11

and Christensen; and Synek—and Hidden Hills Owner's Association were making claims against it

12

for damages due to a "catastrophic landslide" which they alleged to have been caused by JKT's

13

performance of its landscaping services. Since August 23, 2019, Atain has been providing JKT with

14

a defense to those claims, subject to a reservation of rights, including its right to  file a Declaratory

15

Relief Action seeking a determination of no duty to defend/indemnify and seeking reimbursement

16

of defense costs incurred by it.

17

Atain filed its Complaint for Declaratory Relief and Reimbursement on November 11, 2019,

18

seeking a judicial determination that it has and never had a duty to defend or indemnify JKT against

19

these or any other claims arising out of the loss.[1] Defendants Meese and Christensen filed a

20

Complaint for Damages against JKT and others in Napa County Superior Court on December 18,

21

2019. Defendant Synek also filed Complaint for Damages in Napa County Superior Court on

22

December 18, 2019. Both Complaints assert claims for damages as a result of the landslide. The

23

Meese/Christensen Complaint asserts that landscaping services performed by JKT for the original

24

homeowner caused or contributed to cause the landslide. Although the Synek Complaint does not

25

name JKT as a defendant, it implicates the landscaping services performed by JKT as a cause or

26

contributing cause of the landslide.

27

28

---

[1] Defendants Christensen and Meese, Hidden Hills Owner's Association, Synek, and Eicher-Blanusa, have all stipulated to be bound by the judgment entered in this Action and the Court has granted those Stipulations. See Dkts. 12 and 20, 16 and 26, 29 and 30, 44 and 45.

Although an insurer's duty to defend is broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. Atain has no duty to defend claims falling outside the scope of the insuring clauses included within the policy, claims falling within an express exclusion from coverage, or claims barred by statutory or public policy limitations. Even if a loss clearly falls within the policy's insuring agreement there is no coverage if an exclusion applies.

The material facts are undisputed: the claims asserted against JKT arise from "earth movement" which is alleged to have been caused by the landscaping services JKT performed. Two exclusions in the Atain policies—the Subsidence and Professional Services Exclusions—each independently of the other, clearly and unambiguously preclude coverage for the claims asserted against JKT, as a matter of law. Atain is therefore entitled to summary judgment in its favor declaring that it does not and never had any duty to defend or indemnify JKT against these claims, authorizing it to withdraw from the defense of JKT, and authorizing it to seek reimbursement for defense fees and costs it has incurred in providing a defense to JKT.

## II.    UNDISPUTED FACTS

### A.    JKT Performs Landscaping Services At 1213 Tall Grass Court

1213 Tall Grass Court ("1213 Tall Grass") is part of a subdivision known as Hidden Hills, which was developed and built by O'Brien at Patrick Road, LLC ("O'Brien"). Dr. Eichner-Blanusa purchased 1213 Tall Grass in 2011 and hired JKT to landscape the back yard and construct various improvements including a perimeter landscape seat-wall, a concrete slab which originated at the house and extended into the backyard, a pergola, an outdoor kitchen, fireplace, patio, landscape wall, and outdoor concrete staircase. (Dkt. 1, Complaint, ¶ 13 and Dkt. 31, JKT's Answer to Complaint, ¶ 2—admitting the allegations in ¶ 13 of the Complaint.) This work was completed in 2011. (*Ibid.*) In 2012, JKT did some planting on the slope at the 1213 Tall Grass. (*Ibid.*)

### B.    Changes In Ownership Of 1213 Tall Grass Court And 1207 Tall Grass Court

1213 Tall Grass was sold by Dr. Eichner-Blanusa to Mike and Miriam Glavin in 2016, who in turn sold the property to Richard Meese ("Meese") and Elizabeth Christensen ("Christensen") in 2018. Meese and Christensen are the current owners of 1213 Tall Grass. (RFJN, **Exhibit 1**, Meese Complaint, ¶¶ 2 and 25.) 1207 Tall Grass Court ("1207 Tall Grass"), the property owned by Synek,

1    is located adjacent to 1213 Tall Grass.

2        **C.**      **The Landslide**

3            In March of 2019, small fissures began appearing in the ground in 1213 Tall Grass's back

4    yard (RFJN, **Exhibit 1**, Meese Complaint, ¶ 26.) Over the next few weeks, the concrete patio and

5    outdoor fireplace began to crack and separate from the rest of the backyard, one of the pergolas

6    began to lean as the ground underneath it slipped downhill (*Ibid*.) The soil continued to move

7    through the month of March. (*Id*., ¶ 27). By April, catastrophic failure occurred when a large

8    portion of the hillside at 1213 Tall Grass collapsed, causing the patio and outdoor fireplace to slide

9    15 feet downhill. (*Ibid*.) A steep, nearly vertical scarp appeared immediately behind the outdoor

10   kitchen where the backyard used to be. (*Ibid*.) Movement of the earth sheared off a 12-inch

11   drainpipe running under 1213 Tall Grass, causing large volumes of water to cascade from the pipe,

12   carving large gullies into the hillside (*Ibid*.) Exhibit D to the Meese Complaint shows the condition

13   of 1213 Tall Grass before and after the earth movement occurred. (*Id*., ¶ 27 and Exhibit D attached

14   thereto.)

15       **D.**      **JKT Is Notified Of Potential Claims Arising From The Landscaping Services It**
16                 **Performed At 1213 Tall Grass**

17           In August 2019, JKT began receiving notices that its work at 1213 Tall Grass was

18   implicated as a cause of the landslide. (Declaration of Amy L. Felder, ¶¶ 4-6 and **Exhibits A, B,**

19   **and C**.) By letter dated August 3, 2019, counsel for Meese and Christensen notified JKT that 1213

20   Tall Grass Court had "suffered a catastrophic landslide, resulting in the loss of a significant portion

21   of the backyard." (*Id*., ¶ 4, **Exhibit A**.) The letter notified JKT that "tort claims arising from the

22   landslide may be brought by Meese and Christensen, and others, against JKT." (*Ibid*.)

23           By letter dated August 14, 2019, JKT was notified of the landslide and resulting damage by

24   counsel for O'Brien & Associates. ( *Id*., ¶ 5 , **Exhibit B**.) This letter stated that JKT's action and

25   inactions with respect to the improvements made by it at the 1213 Tall Grass Property caused or

26   contributed to the loss. (*Ibid*.) JKT was asked to acknowledge and accept responsibility for the

27   damage and repair costs being alleged by the owners of 1213 and 1207 Tall Grass. (*Ibid*.)

28           By letter dated August 27, 2019, counsel for Dr. Eichner-Blanusa advised that she had been

1    placed on notice of a "catastrophic landslide" and resulting damage. (*Id*., ¶ 6, **Exhibit C**.) This

2    letter urged JKT to notify its insurers of the potential claim against her, arising from work

3    performed by JKT at the property. (*Ibid*.)

4         **E.    JKT Tenders Defense To Atain And Atain Responds**

5         JKT tendered defense of the claims asserted by Meese & Christensen, O'Brien and Eichner-

6    Blanusa to Atain beginning on August 21, 2019. (Felder Decl., ¶ 3.) Atain accepted JKT's tender of

7    defense subject to a full and complete reservation of rights, based on various policy exclusions,

8    including the Subsidence and Professional Services Exclusions by letter dated August 23, 2019.

9    (Felder Decl., ¶ 7, **Exhibit D**.) Atain also reserved its right to seek reimbursement of all defense

10   fees and costs incurred by it. (*Ibid*.) Atain appointed defense counsel to represent and defend JKT

11   (Felder Decl., ¶ 8.) To date, Atain has incurred $101,597.09 in defense fees and costs. (Felder

12   Decl., ¶ 9.)

13        **F.    The Lawsuits**

14        Atain filed its Complaint for Declaratory Relief and Reimbursement on November 11, 2019.

15   (Dkt. 1.) Defendants Meese and Christensen filed a Complaint for Damages against JKT and others

16   on December 18, 2019 (Request for Judicial Notice ("RFJN"), and **Exhibit 1** attached thereto

17   ("Meese Complaint.").) Defendant Synek also filed her Complaint for Damages on December 18,

18   2019. (RFJN, and **Exhibit 2** attached thereto ("Synek Complaint.").) Both Complaints assert claims

19   for damages as a result of a landslide. (RFJN, **Exhibit 1**, ¶¶ 1, 26-27 and **Exhibit 2**, ¶ 18.) The

20   Meese Complaint asserts that landscaping services performed by JKT for the original homeowner

21   caused or contributed to cause the landslide. (RFJN, **Exhibit 1**, ¶¶ 22, 24, 32, 68-70.) Although the

22   Synek Complaint does not name JKT as a defendant, it implicates the landscaping improvements

23   JKT made as a cause or contributing factor to the landslide. (RFJN, **Exhibit 2**, ¶¶ 41 and 43.)

24        **G.    The Atain Policies**

25        Atain issued two successive policies to JKT. Policy No. CIP341994 was in force from April

26   11, 2018 through April 11, 2019. Policy No. CIP371947 is in force from April 11, 2019 through

27   April 11, 2020. (Dkt.1-1., Felder Decl., ¶ 2.)

28        The policies provided commercial general liability coverage under Commercial General

Liability Coverage Form CG 00 01 (04/13). The insuring agreements state:

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     **Insuring Agreement**

   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

                                  * * *

   b.     This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**     The "bodily injury" or "property damage" occurs during the policy period….

(Dkt. 1-1, pp. 100, 225.)

                                  * * *

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1.     **Insuring Agreement**

   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply…..

                                  * * *

   b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your

1
2
        business but only if the offense was committed in the "coverage territory" during the policy period.

3
(Dkt. 1-1, pp. 105, 230.)

4
    Commercial General Liability Coverage Form contains the following definitions:

5
    **SECTION V—DEFINITIONS**

6
                * * *

7
8
    **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

9
                * * *

10
11
12
        **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

13
                * * *

14
    **17.**    "Property damage" means:

15
16
        **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

17
18
19
        **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property.

20
(Dkt. 1-1, pp. 114, 239.)

21
    Both policies contain ENDORSEMENT AF-3340 (06/2010)—SUBSIDENCE

22
EXCLUSION. This endorsement states:

23
    This endorsement modifies insurance provided under the following:

24
        COMMERCIAL GENERAL LIABILITY COVERAGE PART

25
26
27
    This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence," "suit," liability, claim, demand or cause of action arising, in whole or part, out of any "earth movement." This exclusion applies whether or not the "earth movement" arises out of any operations by or on behalf of the insured.

28

ATAIN'S MOTION FOR SUMMARY JUDGMENT        6        Case No. 3:19-cv-7588-SK

1    "Earth movement" includes, but is not limited to: any earth sinking,
     rising, settling, tilting, shifting, slipping, falling away, caving,
2    erosion, subsidence, mud flow or any other movement of land or
     earth.
3

4    (Dkt. 1-1, pp. 90, 214.)

5         Both policies contain ENDORSEMENT AF 001 007 (06/2017)—COMBINED

6    COVERAGE AND EXCLUSION ENDORSEMENT, which states:

7         This endorsement modifies insurance provided under the following:

8              COMMERCIAL GENERAL LIABILITY COVERAGE PART

9                                    * * *

10        VI.    PROFESSIONAL SERVICES EXCLUSION

11        The following exclusion is added to Part 2. Exclusions of **SECTION I—
          COVERAGES, COVERAGE A BODILY INJURY AND
12        PROPERTY DAMAGE LIABILITY** and **COVERAGE B
          PERSONAL AND ADVERTISING INJURY LIABILITY of the
13        COMMERCIAL GENERAL LIABILITY FORM**.

14        This insurance does not apply and there shall be no duty to defend or
          indemnify any insured for any "occurrence", "suit", liability, demand
15        or cause of action arising, in whole or in part, out of any claim
          involving the rendering or failure to render any "professional
16        service."

17        Further, when any insured has purchased or obtained errors and/or
          omissions coverage or any other type of professional service coverage
18        and the claim, in any way arises, in whole or part, out of the services
          performed by any insured, there shall be no duty to defend or
19        indemnify under this policy. Whether or not such E&O or any other
          professional coverage has been purchased or obtained, however, the
20        first paragraph of this exclusion remains in full force and effect.
          "Professional Service" includes, but is not limited to, any of the
21        following: (1) accountant; (2) architect; (3) engineer; (4) insurance
          agent or broker; (5) lawyer; (6) any medical professional; (7) real
22        estate broker or agent; (8) surveyor; (9) health inspector; (10) safety
          inspector; (11) any service where the insured is retained or asked to
23        render an opinion, written or verbal, to a third party; or (12) any other
          service that is of a professional nature, regardless of whether a license
24        or certification is required.

25   (Dkt. 1-1, pp. 69 & 73 and pp. 193 & 197.

26   / / /

27   / / /

28   / / /

ATAIN'S MOTION FOR SUMMARY              7              Case No. 3:19-cv-7588-SK
JUDGMENT

III.     **LEGAL ARGUMENT**

      A.     **Summary Judgment Is Appropriate Because The Material Facts Are**

              **Undisputed And The Interpretation Of The Atain Policies Is An Issue Of Law**

Summary judgment is warranted where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F.Supp.2d 1119, 1123 (C.D. Cal. 2005). Thus, the district court should grant summary judgment if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party moving for summary judgment has the initial burden to show the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324. The mere existence of a "scintilla of evidence" in support of the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252.

Interpretation of an insurance policy is a question of law for the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). Summary judgment is an appropriate means of determining coverage under an insurance policy where there are no issues of material fact to be tried and the sole issue before the court is one of law. *State Farm Fire & Cas. Co. v. Eddy*, 218 Cal.App.3d 958, 964-965 (1990), citing *Pepper Industries, Inc. v. Home Ins. Co.*, 67 Cal.App.3d 1012, 1017 (1977). Here, summary judgment is proper where the Court is asked to interpret the provisions of an insurance policy and apply those provisions to the undisputed facts.

1

**B.     Atain's Duty To Defend Although Broad, Is Not Unlimited**

2      An insurer's duty to defend arises when a suit against an insured alleges a claim that

3 potentially subjects the insured to liability for covered damages unless the insurer can demonstrate,

4 by reference to undisputed facts, that the claim is not covered. *Montrose Chem. Corp. v. Super. Ct.*,

5 6 Cal.4th 287, 296-297 (1993). In assessing whether an insurer's duty to defend has been triggered,

6 a court must consider all facts available to the insurer at the time the insured has tendered defense

7 of claims made against it. *Id.* at 297. The court must then compare "the allegations contained in the

8 Complaint with the terms of the policy and ascertain whether the facts alleged together with the

9 facts known to the insurer at the inception of a lawsuit or tender of defense reveal a possibility that

10 the claim is covered." *USF v. Clarendon Am. Ins. Co.*, 452 F.Supp.2d 972, 992 (C.D. Cal. 2006),

11 citing *Montrose*, 6 Cal.4th at 295.

12      The potential for coverage is determined not by the semantics of the underlying lawsuit, but

13 rather by the actual facts alleged. *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 606-

14 607 (1986). Thus, an insurer that issues a liability policy has a duty to defend the insured against

15 potentially covered claims. This duty is separate from and broader than the insurer's duty to

16 indemnify, which applies only to claims that are actually covered by the policy. *Waller*, 11 Cal.4th

17 at 19.

18      But "the duty to defend, although broad, is not unlimited; it is measured by the nature and

19 kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19, citing *Gray v. Zurich Ins. Co.*, 65

20 Cal.2d. 263, 274 (1965). Therefore, under California law, "where there is no possibility of

21 coverage, there is no duty to defend ... ." *Waller*, 11 Cal.4th at 19, citing *Fire Ins. Exch. v. Abbott,*

22 204 Cal.App.3d 1012, 1029 (1988). For example, an insurer "need not defend if the third party

23 complaint can by no conceivable theory raise a single issue which could bring it within the policy

24 coverage." *La Jolla Beach & Tennis Club v. Indus. Indem. Co.*, 9 Cal.4th 27, 39 (1994). Even if a

25 loss clearly falls within the policy's insuring agreement there is no coverage if an exclusion applies.

26 *Watts Indus. Inc. v. Zurich Am. Ins. Co.*, 121 Cal.App.4th 1029, 1046 (2004).

27      JKT bears the burden of establishing that the claims made against it give rise to the potential

28 for coverage under the insuring agreements included within the Atain policies. *Waller*, 11 Cal.4th at

19. Only if JKT meets this burden does Atain then has the burden to prove the applicability of any exclusions to coverage. *Watts Indus. Inc.,* 121 Cal.App.4th at 1046. In order to be relieved of its duty to defend, Atain must establish the absence of any potential for coverage by demonstrating that the claim cannot fall within coverage as a matter of law. *Montrose*, *supra*, 6 Cal.4th at 300.

### C.   The Rules For Interpreting Insurance Policies

#### 1.   The Policies Must Be Given Their Plain Meaning

The first rule in the "basic framework of interpretation of insurance policies" is that an insurance policy is given its plain meaning and all terms are read in their ordinary and popular sense in the context of the policy as a whole. *Romano v. Mercury Ins. Co.*, 128 Cal.App.4th 1333, 1340 (2005); *Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1265 (1992); Croskey, *et al.*, Cal. Prac. Guide: Insurance Litigation, ¶ 4.5 (The Rutter Group 2009). The court's "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. . . . If contractual language is clear and explicit, it governs." *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1018 (2009). The mutual intention of the parties at the time the policy was issued must be "inferred, if possible, solely from the terms of the policy." *Fire Ins. Exch. v. Super. Ct.*, 116 Cal.App.4th 446, 453 (2004).

#### 2.   The Court Must First Determine Whether The Policy Terms Are Ambiguous

A court's "first task in interpreting an insurance policy" is to determine "whether the language of the policy, as it would be construed by a layperson, is ambiguous." *Baker v. Nat'l Interstate Ins. Co.*, 180 Cal.App.4th 1319, 1327 (2009); *AIU Ins. Co v. Super. Ct.*, 51 Cal.3d 807, 822 (1990). If the meaning a layperson would ascribe to the language of an insurance policy is clear and unambiguous, a court will apply that meaning. *Ibid*. One of the "elementary rules of contract interpretation" is that "policy language is interpreted in its ordinary and popular sense and as a 'layman would read it and not as it might be analyzed by an attorney or an insurance expert.'" *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 471 (2004). Legalistic or technical interpretations of policy terms cannot serve to undermine the "plain meaning" of the words used.

An insurance policy provision is ambiguous only "when it is capable of two or more

constructions, both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867 (1993); *see, also, Atlantic Mut. Ins. Co. v. Ruiz*, 123 Cal.App.4th 1197, 1203 (2004) (provision ambiguous only "if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole"). A court "may not adopt a strained or absurd interpretation in order to find ambiguity where none would otherwise exist in the language itself." *Baker*, 180 Cal.App.4th at 1327; *Waller*, 11 Cal.4th at 18-19 (courts "will not strain to create an ambiguity where none exists").

The fact that a term is not defined in the policy does not make it ambiguous. *Powerine Oil Co. v. Super. Ct.*, 37 Cal.4th 377, 390-91 (2005). Nor does "[d]isagreement concerning the meaning of a phrase, or the fact that a word or phrase isolated from its context is susceptible of more than one meaning." *Ibid*. Language in a contract "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Ibid*.

The "fact that the exclusion could have been written differently does not mean it is ambiguous." *Jon Davler, Inc. v. Arch Ins. Co*., 229 Cal.App.4th 1025, 1039 (2014). In addition, a party to a contract may not insert new words or terms to alter the plain meaning of the existing language. *Rosen v. E.C. Losch, Inc.*, 234 Cal.App.2d 324, 330 (1965) ("a court is without power, under the guise of construction, to depart from the plain meaning of words contained in a writing . . . and insert terms or limitations not found in the writing").

### 3. Only If The Court Finds The Policy Terms To Be Ambiguous Will The Policy Be Interpreted To Comport With The Insured's Objectively Reasonable Expectations

The last rule of policy interpretation is that only if the court finds that policy language has no plain meaning or is ambiguous, will that language then be interpreted in the sense that the insurer reasonably believed the insured understood it at the time the policy was issued (the "objectively reasonable expectations of the insured"). *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal.App.4th 1234, 1244-1245 (2003) ("In resolving ambiguity we must first attempt to interpret the ambiguous provision in the sense the insurer believed the insured would reasonably

and objectively have understood it when the policy was issued.") (citations omitted); *see, also,*

*Sterling Builders, Inc. v. United Nat'l Ins. Co.*, 79 Cal.App.4th 105, 112 (2000) ("Even when there

is an ambiguity in an insurance contract, the ambiguous term must still comport with a

policyholder's 'objectively reasonable expectations.'"). The disputed policy language "must be

examined in the context of the intended function in the policy." *Baker*, 180 Cal.App.4th at 1328

citing *Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal.App.4th 1103, 1111-12 (1998).

This examination "requires a court to consider the policy as a whole, and the circumstances of the

underlying case in which the claim arises, taken together with a dose of common sense." *Baker*, 180

Cal.App.4th at 1328; *Nissel*, 62 Cal.App.4th at 1111-12; *St. Paul*, 111 Cal.App.4th at 1245.

### D.   As A Matter Of Law, Atain Has No Duty To Defend Or Indemnify JKT

#### 1.   JKT Has Met Its Burden Of Proving The Claims Fall Within The Scope Of The Coverage A Insuring Agreement

The pre-suit letters as well as the claims asserted in the Meese and Synek Complaints assert

claims for "property damage" caused by an "occurrence" against JKT. JKT has therefore met its

burden of proving these claims fail within the scope of the Coverage A insuring agreement.

#### 2.   The Claims Asserted Against JKT Do Not Fall Within The Scope Of The Coverage B Insuring Agreement

The Eighth Cause of Action in the Meese Complaint is for Nuisance. (RFJN, **Exhibit 1**, ¶¶

82-88.)[2] Coverage B provides coverage for "personal and advertising injury" which is defined to

include the offense of "wrongful eviction from, wrongful entry into, or invasion of the right of

private occupancy of a room, dwelling or premises that a person occupies committed by or on

behalf of its owner, landlord or lessor. The Cause of Action for Nuisance potentially falls within the

definition of "wrongful entry" or "invasion of the right of private occupancy." See, *Legarra v.*

*Federated Mutual Ins.* Co., 35 Cal.App.4th 1472, 1484 (1995) (holding that wrongful entry may be

either wrongful dispossession or other trespass) and *Albert v. Truck Ins. Exchange*, 23 Cal.App.5th

367, 380 (2018).

---

[2] The Seventh Cause of Action in the Synek Complaint is for Trespass, but this Cause of Action is only asserted against the Hidden Hills Owner's Association and the former and current owners of 1213 Tall Grass, not against JKT. (RFJN, **Exhibit 2**, Synek Complaint, ¶¶ 11, 12, and 86-91.)

But, California courts have held the phrase "committed by or on behalf of the owner, landlord or lessor" means exactly that—the act of wrongful eviction, wrongful entry or invasion of the right of private occupancy must be committed against the occupier of the premises by or on behalf of the property owner. See *Mirpad, LLC v. California Ins. Guarantee Assn*., 132 Cal. App. 4th 1058, 1064 n.3 (2005). At the time the landslide occurred, JKT was neither the property owner nor was it acting by or on behalf of the owner, landlord or lessor of 1213 Tall Grass or 1207 Tall Grass or the Hidden Hills Owner's Association. Accordingly, JKT has not and cannot meet its burden of proving the claim for Nuisance asserted in the Meese Complaint falls within the scope of the Coverage B insuring agreement. Atain has no duty to defend or indemnify JKT under the Coverage B portion of the policies, as a matter of law. But even assuming the Court determines the cause of action for Nuisance falls within the scope of the Coverage B insuring agreement, all potential for coverage for that Cause of Action is removed by the policies' exclusions.

### 3. Atain Has Met Its Burden Of Proving All Potential For Coverage For The Claims Asserted Against JKT Is Excluded, As A Matter Of Law

Because JKT has met its burden of proving the claims asserted fall within the scope of the Coverage A insuring agreement, Atain must prove, as a matter of law, that all potential for coverage for those claims is removed by one or more policy exclusions. Atain can and has met its burden of proof because all potential for the claims asserted against JKT is precluded not by one, but by two exclusions, either one of which separately applied removes all potential for coverage.

#### a. The Subsidence Exclusion Removes All Potential For Coverage For The Claims Asserted Against JKT, As A Matter Of Law

The Atain policies preclude coverage for any liability, suit, claim, demand or cause of action arising, in whole or in part, out of any "earth movement" regardless of whether the earth movement arises out of any operations by or on behalf of the insured. The exclusion defines "earth movement" as including, but not limited to earth sinking, rising, slipping, falling away, caving, subsiding or any other movement of land or earth.

California courts interpreting similarly worded exclusions have found them unambiguous. In *City of Carlsbad v Ins. Co. of State of Pennsylvania,* 180 Cal.App.4th 176 (2009), the City's

negligent maintenance of its water system caused a hillside to become saturated with water and slide. The landslide caused damage to several condominium units. *Id*. at 179. The City paid $12,670,000 to settle the claims and then sought indemnification from its insurer, Insurance Company of the State of Pennsylvania ("ICSOP"). *Ibid*.

ICSOP declined coverage based on Exclusion X., which stated: "We will not defend or pay under this Policy for any claims or suits against you: for property damage arising out of land subsidence for any reason whatsoever." *Ibid*. The policy defined "land subsidence" as movement of land or earth, including but not limited to sinking, earth movement, landslide, slipping, falling away, caving in, earth sinking, rising, shifting or tilting. *Ibid*.

The City sued ICSOP for breach of contract and bad faith. The parties filed cross-motions for summary judgment. The City asserted the exclusion did not apply for three reasons: (1) under the "concurrent cause doctrine," because the exclusion did not explicitly negate coverage where the damage resulted from more than one cause, it was entitled to indemnification; (2) the exclusion violated California Insurance Code section 530 (the efficient proximate cause doctrine); and (3) the exclusion did not apply to man-made forces. *Id*. at 180.

Countering the City's arguments, ICSOP contended": (1) the exclusion unambiguously barred coverage for all property damage arising out of the landslide regardless of the cause; (2) the concurrent cause doctrine was inapplicable because there were not two separate and independent acts of negligence that combined to cause the damage; and (3) even assuming the concurrent cause doctrine applied, the exclusion still applied. *Ibid*. The trial court ruled in ICSOP's favor; the City appealed. *Ibid*.

Applying the same rules of construction set forth under Section B., above, the Court of Appeal began its analysis by determining the plain meaning of the phrase "damage arising out of land subsidence for any reason whatsoever." *Id*. at 181. The Court held the term "any" was "broad, general and all embracing" and that "the only reasonable interpretation of the exclusion clause is that it bars coverage for all property damage caused by the landslide regardless of the cause." *Id*. at 182. It mattered not how the landslide was caused. *Ibid*.

In so holding, the Court rejected the City's argument that the exclusion was hopelessly

14

1   ambiguous, unclear and incomplete because it failed to state that land subsidence was not covered

2   "regardless of cause" or "whether it occurs alone, jointly or in sequence with other causes," holding

3   that simply because the exclusion could have been more precise or explicit did not mean it was

4   ambiguous. *Ibid*. The Court also rejected the City's argument that the exclusion did not apply to

5   landslides caused by man-made forces such as its negligent maintenance of the water system

6   because the definition of "land subsidence" only pointed to natural phenomena, holding that the

7   definition only referred to types of occurrences that constitute land subsidence, not the cause of

8   those occurrences. *Ibid*.

9       The Court also rejected the City's contentions that the exclusion was inapplicable under the

10  concurrent cause doctrine and/or because it violated the efficient proximate cause doctrine. The

11  Court held the concurrent cause doctrine did not assist the City because it only applied in instances

12  where two negligent acts or omissions by the insured—one of which independent of the excluded

13  cause rendered the insured liable for the resulting injuries—which was not the situation before the

14  Court. *Id*. at 183, citing *Prince v. United Nat. Ins. Co.*, 142 Cal.App.4th 233, 239 (2006). After

15  noting that the efficient proximate cause doctrine applied only in first party cases, not to third party

16  cases like the one before it, the Court held that even if the doctrine applied it would not assist the

17  City as the efficient proximate cause doctrine did not prohibit an insurer from excluding some

18  manifestations of a covered peril so long as the exclusion "plainly and precisely communicates" to

19  the insured which manifestation of a peril is not covered. *Ibid*., citing *Julian v. Hartford*

20  *Underwriters Ins. Co*., 35 Cal.4th 747, 750 (2005). Because the exclusion in the ICSOP policy

21  plainly and precisely explained to the City that the peril of land subsidence was not covered,

22  regardless of the cause, the exclusion applied to bar coverage for the claims asserted against the

23  City. *Id*. at 184.

24      The analysis in the *City of Carlsbad* case was followed by the Court in *City of Fullerton v.*

25  *Ins. Co. of the Pa*., SACV 13-00926-CJC(RNBx), 2014 U.S. Dist. LEXIS 194718 (C.D. Cal. 2014)

26  aff'd 664 Fed. Appx. 618 (9th Cir. 2016) ("*Fullerton*"). In that case the City of Fullerton, exercising

27  its right of inverse condemnation, widened a trail at the base of a hill paralleling several homes. The

28  widening efforts weakened the slope. As a result of heavy rains in 2004-2005, the slope failed and

1    ultimately slid in late January of 2005 and February of 2006. *Id*. at *5. The homeowners made

2    claims against the City of Fullerton. The City of Fullerton tendered to ICSOP, who declined

3    coverage in part based on Exclusion X, the same exclusion addressed in *City of Carlsbad*. *Ibid*.

4         The Court noted that the allegations in the Complaint filed in the underlying action "made

5    clear that the basis of the homeowners' action was damage to their land from land subsidence—

6    slope failures—caused by the City of Fullerton's trail project." *Id*. at *12. The City of Fullerton

7    asserted the exclusion did not apply because the policy specifically covered negligence caused

8    losses and its negligence in widening the trail was the predominant cause of the loss. The Court

9    rejected this argument holding that the exclusion applied to land subsidence, regardless of its cause.

10   *Id*. at *16. The City of Fullerton next asserted that the exclusion did not apply because not all of the

11   alleged property damage necessarily arose out of land subsidence. *Id*. at *17. The Court rejected

12   this argument because the term "arising out of" even when used in an exclusionary clause, "broadly

13   links a factual situation with the event creating liability and connotes only a minimal cause

14   connection or incidental relationship. *Ibid*, citing *Acceptance Ins. Co. v. Syufy Enters*., 69

15   Cal.App.4th 321, 327 (1999). The *Fullerton* court held "Exclusion X is unambiguous in its broad

16   application, and clearly precludes coverage for the factual situation presented by the [underlying]

17   action." *Ibid*.

18        In a last ditch attempt to find coverage, the City of Fullerton asserted that there might be

19   coverage for measures taken to shore up or support the land that had not yet subsided but remained

20   at a higher risk for future movement. *Ibid*. The Court rejected this argument for two reasons: (1)

21   because a future risk of harm was not "physical damage to tangible property" there was no

22   "property damage" and thus no coverage under the policy and (2) even assuming the alleged risk of

23   future movement constituted "property damage," because such risk arose from land subsidence,

24   Exclusion X still applied to bar coverage for this claim. *Ibid*.

25        The Ninth Circuit affirmed, holding that the Complaint in the underlying action as well as

26   the City of Fullerton's communications with ICSOP confirmed the claims asserted against the City

27   of Fullerton were for damage caused by landslides as well as progressive, ongoing, destabilization

28   of the land. 664 Fed.Appx. at 618. The Ninth Circuit affirmed that Exclusion X limited coverage for

1    "property damage" by excluding claims "arising out of land subsidence for any reason whatsoever,"

2    and for these reasons, the district court correctly determined the claims for property damage

3    asserted against the City fell within the exclusion. *Id*. at 619.

4         In *Emplrs. Ins. Co. v. Lexington Ins. Co.,* U.S. Dist. LEXIS 115747 (C.D. Cal. 2014) aff'd

5    671 Fed. Appx. 552 (2016), the insured, Rick Concrete, leased a concrete pumper truck—a single

6    self-propelled unit consisting of a truck and trailer. The tractor of the unit acted as a counterweight

7    for the trailer when the boom—a long cylinder through which concrete is pumped—was deployed

8    to pour concrete. *Id*. at *9-10. The pumper truck was parked on the edge of a roadway. Three of the

9    four metal legs which extend outward from the truck to help stabilize it were placed on pavement.

10   The fourth leg was placed on soil which had been improperly compacted. *Id*. at *10. During the

11   course of operations, the soil gave way, causing the pumper truck to shift, which in turn caused the

12   concrete boom to fall, striking four employees. One of the employees was killed. *Id.* at *14.

13        Rick Concrete was insured by two insurers: Employers Insurance Company of Wausau,

14   ("Wausau") who issued a Commercial Auto Policy and, Lexington Insurance Company

15   ("Lexington"), who issued a Commercial General Liability Policy. *Id*. at 14-16. A dispute arose

16   whether one or both policies applied to the loss. In an action filed in state court, it was determined

17   that the Wausau policy provided coverage for the loss. The only issue before the district court was

18   whether Lexington also had a duty to defend Rick Concrete. *Id*. at *22.

19        The Lexington policy contained a Subsidence Exclusion that stated: "This policy does not

20   provide coverage and the Company will not pay any defense expenses …or any damages … related

21   to, arising out of … caused directly or indirectly, or contributed to … by "subsidence" regardless of

22   any other cause … that contributed concurrently or in any sequence to that loss…." *Id*. at *20.

23        Wausau asserted the Subsidence Exclusion was ambiguous because it did not specifically

24   list damages for "bodily injury." *Id*. at *36. The Court rejected this argument, holding that the

25   exclusions reference to "coverage" and "any damages" includes the types of damages listed under

26   the coverage section of the policy—in this instance Coverage A—Bodily Injury and Property

27   Damage. *Id*. at *37.

28        Wausau next argued that the exclusion should be construed narrowly to only apply to the

"traditional type of earth movement calamity," and that the exclusion was only intended to apply to the cost of stabilizing land after an "earth movement calamity." *Id.* at *39. The Court rejected this contention as it ignored the plain language of the exclusion which broadly excluded coverage for damage caused by "earth movement of any kind whatsoever." *Ibid*. The Court held merely because an exclusion might apply in a variety of situations did not necessarily render the exclusion ambiguous. *Id*. at *40.

The district court held the reports issued by Cal/OSHA stating that the accident was caused when the soil under the left leg failed to support the load, causing the leg to puncture and sink, supported Lexington's argument that "earth movement" or "sinking" contributed to cause the accident, such that the "Subsidence Exclusion" applied. *Id*. at *40-41. The Ninth Circuit affirmed, holding there was no genuine issue of material fact as to whether "earth movement" at least contributed to the injuries at issue and the Lexington policy's Subsidence Exclusion therefore applied. 671 Fed.Appx. at 552.

Here there are no genuine issues of material fact. The pre-suit letters and the allegations in the Meese and Synek Complaints make it clear that the damages sought from JKT arise directly from "earth movement." The pre-suit letters describe the loss as a "catastrophic landslide" (Felder Decl., ¶ 4 and 6, **Exhibits A and C**) and as "an abrupt and extensive failure" with the "supporting hillside continu[ing] to experience movement and destabilization," noting that the "first visible signs of earth movement began in March, 2019." (Felder Decl., ¶ 5, **Exhibit B**.) The Meese Complaint refers to fissures appearing in the soil, ground slipping downhill, and continuous earth movement until a large portion of the hillside collapsed. (RFJN, **Exhibit 1**, ¶ 27.) The Synek Complaint refers to a substantial landslide which caused substantial soil to destabilize and slide down the slope causing substantial damage to the flatwork and structures. (RFJN, **Exhibit 2**, ¶ 18.) The before and after photographs attached as Exhibit D to the Meese Complaint clearly illustrate that the damage is the result of earth movement. (RFJN, **Exhibit 1**, ¶ 27 and Exhibit D.)

The Atain policies exclude coverage for "property damage" arising out of earth movement, *regardless of whether the earth movement arises out of any operations by or on behalf of the insured*. Like the exclusion in *City of Carlsbad* and *Fullerton*, the Subsidence Exclusion in the

1   Atain policy is unambiguous in its broad application. Under the analysis set forth in *City of*
2   *Carlsbad*, *Fullerton*, and *Emplrs. Ins. Co.*, this exclusion plainly, clearly and unambiguously
3   precludes all potential for coverage for the claims asserted against JKT, all of which arise out of
4   "earth movement," as a matter of law.
5       Atain has met its burden of proving the Subsidence Exclusion in its policies precludes
6   coverage for all claims asserted against JKT as a matter of law. Atain is therefore entitled to entry
7   of summary judgment in its favor on its Complaint for Declaratory Relief and Reimbursement.
8           b.    The Professional Services Exclusion Removes All Potential For
9                 Coverage For The Claims Asserted Against JKT, As A Matter Of
10                Law
11      The Atain policies also exclude coverage for any liability, demand or cause of action
12  arising, in whole or part, out of any claim involving the rendering or failure to render any
13  "professional service." The term "professional services" is not defined by the Atain policies. See,
14  *Atain Specialty Ins. Co. v. Szetela*, 2016 U.S. Dist. LEXIS 38059 at *8, 2016 WL 1138139 (E. D.
15  Cal. 2016) ("*Szetela*") ( acknowledging that the Atain policy did not define the term "professional
16  services or services of a professional nature and holding that the exclusion applied to preclude
17  coverage for "property damage" arising out of the insured's rendering of pilot car services").
18      When the term "professional services" is undefined by the policy, California courts define
19  the term to include services arising out of a vocation, calling, occupation or employment involving
20  specialized knowledge, labor or skill." *Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97
21  Cal.App.4th 704, 713 (2002). California courts "long ago abandoned the antiquated notion of
22  'professional services' as those performed only by a learned doctor, lawyer or engineer." *See, e.g.,*
23  *Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal.App.3d 800 (1989) (holding that ear piercing
24  is a professional service); and *Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal.App.4th 1246
25  (2003) (holding that installation of a gas heater is a professional service).
26      The most recent decision construing a Professional Services exclusion is *Energy Insurance*
27  *Mutual Limited v. Ace American Insurance Company*, 14 Cal.App.5th 281 (2017) ("*Energy*
28  *Insurance*"). The *Energy Insurance* Court confirmed prior California case law, holding that a

commercial general liability policy is intended to cover general liability for accidental occurrences, not an insured's professional or business skills. *Id*. at 292. Relying on *Amex* and *Hollingsworth*, the Court determined that the act of locating and marking underground pipes was a "skilled service" and thus fell within the exclusion. *Id*. at 293. The Court held that no reasonable insured could expect a commercial general liability policy to cover injuries caused by the performance of the services it was hired to perform and that the Professional Services Exclusion "simply reconfirms that the policy was not intended to cover the insured's mistakes in how it provides promised services to others." *Id*. at 299-300. The *Energy Insurance* Court also held the inclusion of a Professional Services exclusion in a commercial general liability policy did not render the coverage afforded by that policy illusory. *Id*. at 307.

Atain anticipates that JKT may assert that the services provided by it do not fall within the examples of "professional services" listed in the Atain policy. But the exclusion contains two "catch all" phrases, one at the beginning of the list of examples and one at the end of the list of examples. The "catch all" phrases "includes but is not limited to" at the beginning of the list of examples and the "catch all" phrase "any other service that is of a professional nature" indicate that the list of examples in the exclusion is not exhaustive. Applying the doctrine of *ejusdem generis* Courts that have construed similarly worded Professional Services Exclusions and have deemed them sufficiently broad to include all professional services as that term is defined by California case law in the absence of a policy definition.

For example, the Court in *Stone v. Hartford Casualty Co*., 470 F.Supp.2d 1088, 1099 (C.D. Cal. 2006) ("*Stone*") considered a professional service exclusion that was expanded by the introductory phrase "includes but not limited to." The policy excluded damages due to the failure to render any professional service "includ[ing] but is not limited to: (1) Legal, accounting or advertising services; (2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, design or drawings and specifications; (3) Supervisory, inspection, architectural or engineering activities." *Stone, supra*, 470 F.Supp.2d at 1097-1098. The Court concluded that the "professional services exclusion clearly applies to the [plaintiffs'] claims based on [the insured's] professional undertaking to draft plans for

20

room additions, construct and/or supervise construction of the additions, and install a driveway." *Id.*
at 1098. The Court rejected plaintiffs' argument that, because certain services performed were not
specifically identified in the exclusion, the exclusion did not apply. The Court held:

> [Plaintiffs] further attempt to avoid the "professional services"
> exclusion by arguing that some of [the insured's] services—including
> measuring and handling windows and shear wall, removing drywall
> and insulation, and working with electricians and plumbers—are not
> among those described in the "professional services' exclusions' list
> of non-covered services. [Plaintiffs] ignore the "professional
> services" exclusion's plain language stating that the scope of the
> exclusion "*includes, but is not limited to*" the various excluded
> services listed therein.

*Id*. at 1098 (emphasis added). Accordingly, the *Stone* Court granted summary judgment on the duty
to defend in favor of Hartford. *Id*. at 1099.

Similarly, the district court in *Szetela* relied on *ejusdem generis* in interpreting a prior
version of the Professional Services Exclusion in the policies issued to JKT. The court found that
the catch-all phrase "any other service that is of a professional nature" included "pilot car services"
where the enumerated examples of professional jobs falling within the exception included
"Accountant, Architect, Engineer, Insurance Agent or Broker, Lawyer, Medical Professional or
Real Estate Agent Broker." *Szetela,* at *6.

For the Professional Services Exclusion to apply, the act precipitating the injury need not
have been one of professional malpractice as long as the plaintiff was injured in the performance of
the professional service. *Food Pro Internat., Inc. v. Farmer Ins. Exch*., 159 Cal.App.4th 975, 991
(2008). Here the pre-suit letters and the Complaints filed by Meese and Synek assert that the
landslide was caused or contributed to by JKT's landscaping services. (Felder Decl., ¶¶ 4-6 and
**Exhibits A, B. and C**; RFJN, **Exhibit 1**, ¶¶ 22, 24 and 32 (alleging that during construction of
Backyard Improvements JKT broke or damaged drains, subdrains and drainpipes, resulting in
changes in drainage patters and the unwanted accumulation of water in the backyard, causing the
landslide; and RFJN, **Exhibit 2**, ¶ 41—implicating the Backyard Improvements installed by JKT
including the retaining wall with outdoor fireplace system, pergola, outdoor kitchen, flatwork, grass
and irrigation system).) The Meese Complaint alleges that JKT "negligently designed, installed,
constructed, inspected, maintained and repaired the Backyard Improvements by adding

1    unauthorized fill soil, failing to repair leaks in the drainage system after those leaks were brought to

2    its attention and ignored evidence that the Property's slopes were becoming unstable. (RFJN,

3    **Exhibit 1**, ¶ 72.) The Synek Complaint alleges that the landslide was caused by the negligently

4    planned, designed, constructed and installed Backyard Improvements at 1213 Tall Grass. (RFJN,

5    **Exhibit 2**, ¶ 64.)

6         The services performed by JKT are professional in nature, in that they require specialized

7    knowledge, skill and training. The average lay person could not install retaining walls with an

8    outdoor fireplace system, pergolas, an outdoor kitchen, flatwork, grass and irrigation systems.

9    Because the claims asserted against JKT arise out of the rendering or failure to render professional

10   services it was hired to perform, all potential for coverage for these claims is precluded by the

11   Professional Services Exclusion, as a matter of law.

12        Atain has met its burden of proving the Professional Services Exclusion precludes coverage

13   for all claims asserted against JKT as a matter of law. Atain is therefore entitled to entry of

14   summary judgment in its favor on its Complaint for Declaratory Relief and Reimbursement.

15   **IV.    CONCLUSION**

16        The claims asserted against JKT arise from "earth movement" attributed to its rendering of

17   the landscaping services it was hired to perform. The Atain policies exclude coverage for liability

18   arising out of "earth movement" and the insured's rendering or failure to render "professional

19   services." Atain has met its burden of proving the Subsidence and Professional Services Exclusions

20   remove all potential for coverage for the claims asserted against JTK, as a matter of law. Atain is

21   entitled to summary judgment in its favor that it does not and never had a duty to defend or

22   indemnify JKT against the pre-suit claims asserted against it or the claims asserted in the Meese and

23   Synek Actions. Atain is also entitled to summary judgment in its favor authorizing it to withdraw

24   from the defense of JKT and allowing it to seek reimbursement of all defense fees and costs it has

25   incurred.

26   Dated: May 12, 2020               MOKRI VANIS & JONES, LLP
                                        /s/ *GailAnn Y. Stargardter*
27                                      GailAnn Y. Stargardter
                                        Attorneys for Plaintiff ATAIN SPECIALTY
28                                      INSURANCE COMPANY