UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JKT ASSOCIATES, INC., et al.,<br><br>Defendants. | Case No. 19-cv-07588-SK<br><br>**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 47, 48 |

This matter comes before the Court upon consideration of the motion for summary judgment filed by Plaintiff Atain Specialty Insurance Company ("Atain"). The Court determines that this matter is appropriate for disposition without oral argument and is deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for June 22, 2020 is HEREBY VACATED. Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS Atain's motion for the reasons set forth below.

**BACKGROUND**

The facts here are not in dispute. In this action, Atain alleges that it does not owe a duty to defend or indemnify its insured, Defendant JKT Associates, Incorporated ("JKT"), against the claims asserted against JKT by Elizabeth Christensen, Richard Meese, Lora Eichner-Blanusa, M.D., Kristi Synek, or Hidden Hills Owners' Association. In the lawsuits filed by Meese, Christensen, and Synek in Napa County Superior Court, they seek damages as a result of a landslide allegedly caused by JKT's landscaping services. Atain seeks a judicial declaration that it has no duty to defend or indemnify JKT Associates against these claims as a matter of law.

**A.     Request for Judicial Notice and Evidentiary Objections.**

Atain requests that the Court take judicial notice of the complaints filed by Meese and Christensen and by Synek in Napa County Superior Court against JKT. (Dkt. No. 48.) JKT

United States District Court
Northern District of California

objects to the Court's taking judicial notice of the facts alleged within the complaints, but concedes that the Court may take judicial notice of these complaints as public records. (Dkt. No. 50 at 7-8 (citing *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1110-11 (N.D. Cal. 2019) (courts make take judicial notice of existence of matters of public record, but not of the truth of the disputed facts cited therein).) The Court HEREBY GRANTS the request to take judicial notice of the fact that Meese, Christensen, and Synek filed these complaints against JKT in Napa County Superior Court and assert the allegations contained in their complaints. Atain does not seek and the Court does not take judicial notice of the truth of these allegations, *i.e.* whether JKT is actually at fault.

The Court OVERRULES JKT's objections to the Declaration of Amy L. Felder. (Dkt. No. 49.)

**B.     Underlying Lawsuits.**

1207 Tall Grass Court and 1213 Tall Grass Court are single family home properties in the Hidden Hills subdivision of Napa, California. (Dkt. No. 1 (Compl.), ¶ 10; Dkt. No. 31 (JKT's Answer), ¶ 2. Eichner-Blanusa, who owned 1213 Tall Grass Court at the time, hired JKT to perform work on the landscape and hardscape of the property in 2011 and 2012. (Dkt. No. 1, ¶ 13; Dkt. No. 31, ¶ 2.)

In April 2019, the property located at 1213 Tall Grass Court suffered a catastrophic landslide, damaging a portion of the backyard and improvements made on the backyard. (Dkt. No. 1, ¶ 17.) The landslide also damaged the property located at 1207 Tall Grass Court. (*Id*.) In August of 2019, Meese and Christensen, who subsequently purchased the property at 1213 Tall Grass Court, notified JKT of the damage the earth movement/landslide caused to their property and advised JKT that the hillside remains unstable. (Dkt. No. 1, ¶ 18, Dkt. No. 31, ¶ 2.) Meese and Christensen notified JKT that they believed the work it performed on the property caused or contributed to cause the landslide/earth movement and resulting damage and that they and others, including Hidden Hills Owners' Association would be bringing tort claims against JKT. (Dkt. No. 1, ¶ 19; Dkt. No. 31, ¶ 2.)

In August 2019, The O'Brien at Partrick Road, LLC, the developer the Hidden Hills

1   subdivision, notified JKT that the owners of 1207 and 1213 Tall Grass Court contended that JKT's
2   work on the property located at 1213 Tall Grass Court caused or contributed to the landslide and
3   resulting damage to those properties and requested that JKT acknowledge and accept
4   responsibility for the damage and repair costs alleged by the current owners of 1207 and 1213 Tall
5   Grass Court.  (Dkt. No. 1, ¶ 20; Dkt. No. 31, ¶ 2.)

6   In August 2019, Eichner-Blanusa, the former owner of 2013 Tall Grass Court, notified
7   JKT of the potential for lawsuits arising out of the "catastrophic landslide resulting in the loss of a
8   significant portion of the backyard" on which JKT performed landscaping/hardscaping
9   improvements, including the potential for suits filed against her by the current owners and the
10  Hidden Hills Owner's Association.  (Dkt. No. 1, ¶ 22; Dkt. No. 31, ¶ 2.)

11  On August 21, 2019, JKT tendered to Atain the defense of the claims asserted by the
12  homeowners and The O'Brien at Partrick Road.  (Dkt. No. 1, ¶ 25; Dkt. No. 31, ¶ 2.)

### C.   Insurance Policies.

Atain issued two successive commercial general liability policies to JKT.  (Dkt. No. 1, ¶¶ 26, 27; Dkt. No. 31, ¶ 2; Dkt. No. 49, ¶ 2.)  The first, Policy No. CIP341994, was in force from April 11, 2018 through April 11, 2019.  (Dkt. No. 1, ¶ 26; Dkt. No. 31, ¶ 2; Dkt. No. 49, ¶ 2.)  The second, Policy No. CIP371947, was in force from April 11, 2019 through April 11, 2020.  (*Id.*)  Atain attached copies of these policies as Exhibit A to the Complaint.  (Dkt. No. 1, ¶ 26, Ex. A; Dkt. No. 31, ¶ 2.)

Both policies contain the following endorsements:

> ENDORSEMENT AF-33430 (06/2016)—SUBSIDENCE EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence," "suit," liability, claim, demand or cause of action arising, in whole or part, out of any "earth movement."  This exclusion applies whether or not the "earth movement" arises out of any operations by or on behalf of the insured.
>
> "Earth movement" includes, but is not limited to: any earth sinking, rising, settling, tilting, shifting, slipping, falling away, caving,

erosion, subsidence, mud flow or any other movement of land or earth.

. . .

ENDORSEMENT AF 001 007 (06/2017)—COMBINED COVERAGE AND EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

VI.   PROFESSIONAL SERVICES EXCLUSION

The following exclusion is added to Part 2. Exclusions of SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY of the COMMERCIAL GENERAL LIABILITY FORM.

This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence", "suit", liability, demand or cause of action arising, in whole or in part, out of any claim involving the rendering or failure to render any "professional service."

Further, when any insured has purchased or obtained errors and/or omissions coverage or any other type of professional service coverage and the claim, in any way arises, in whole or part, out of the services performed by any insured, there shall be no duty to defend or indemnify under this policy. Whether or not such E&O or any other professional coverage has been purchased or obtained, however, the first paragraph of this exclusion remains in full force and effect. "Professional Service" includes, but is not limited to, any of the following: (1) accountant; (2) architect; (3) engineer; (4)insurance agent or broker; (5) lawyer; (6) any medical professional; (7) real estate broker or agent; (8) surveyor; (9) health inspector; (10) safety inspector; (11) any service where the insured is retained or asked to render an opinion, written or verbal, to a third party; or (12) any other service that is of a professional nature, regardless of whether a license or certification is required.

(Dkt. No. 1, ¶¶ 30, 31, Ex. A; Dkt. No. 31, ¶ 2.)  The parties refer to the first exclusion as the "earth movement exclusion" and the second exclusion as the "professional services exclusion."

Atain advised JKT that it would defend it in the claims asserted as a result of the catastrophic landslide and ongoing instability of the hillside subject to a reservation of rights. (Dkt. No. 1, ¶ 32, Ex. B.)  Atain now contends that, based on the above exclusions, it does not owe JKT a duty to defend and moves for summary judgment on all of its claims for declaratory relief and to be reimbursed for the defense costs and fees it has incurred.

4

## ANALYSIS

**D.      Applicable Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary

judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### E.     Atain's Motion for Summary Judgment.

Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264 (citing Cal. Civ. Code, § 1638); *see also Buss v. Superior Court*, 16 Cal.4th 35, 45 (1997) ("Where it is clear, the language must be read accordingly."). If the contractual language is ambiguous, "it must be read in conformity with what the insurer believed the insured understood thereby at the time of formation and, if it remains problematic, in the sense that satisfies the insured's objectively reasonable expectations." *Buss*, 16 Cal.4th at 45. "An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867 (1993) (emphasis omitted).

"An insurer has a very broad duty to defend its insured under California law." *Anthem Electronics, Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (Cal. 1993) (emphasis in original). To determine whether the insurer owes a duty to defend, courts "compare the allegations of the complaint – and facts extrinsic to the complaint – with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (internal quotation marks and brackets omitted). "If any of the claims in the underlying

1  complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul*
2  *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
3      Courts must interpret coverage clauses "broadly so as to afford the greatest possible
4  protection to the insured" and interpret "exclusionary clauses . . . narrowly against the insurer."
5  *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 101-02 (1973).  Any doubt must be
6  resolved in the insured's favor.  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081
7  (1993).  The insurer bears the burden of demonstrating the matter falls within a policy's
8  exclusionary clause.  *Clemmer v. Harford Ins. Co.*, 22 Cal.3d 865, 880 (1978), *overruled on other*
9  *grounds by Ryan v. Rosenfeld*, 3 Cal. 5th 124 (Cal. 2017).
10     Atain and JKT dispute whether the earth movement exclusion in the insurance policies
11 Atain issued to JKT excludes coverage for earth movement that is man-made or non-natural,  such
12 as JKT's work on 1213 Tall Grass Court.  JKT relies on cases which held that earth movement
13 exclusions preclude coverage only for earth movement caused by natural events, such as
14 earthquakes, so that the policies nonetheless provide coverage for earth movement that is man-
15 made or non-natural.  (Dkt. No. 50 (JKT's Opp. at 4-5) (citing *Murray v. State Farm Fire & Cas.*
16 *Co.*, 203 W. Va. 477 (1998); *Cox v. State Farm Fire & Cas. Co.*, 217 Ga. App. 796, 796–97
17 (1995); *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 902 (N.D. Ill. 2005); *Willmar*
18 *Dev., LLC v. Illinois Nat. Ins. Co.*, 726 F. Supp. 2d 1280, (D. Or. 2010).)  However, these cases
19 are inapposite.  The exclusions in the insurance policies there did not include any explanation
20 regarding the cause of the earth movement.  Instead, the policies merely stated that damage caused
21 by earth movement was excluded and then provided a list of types of earth movements, such as
22 earthquake, volcanic eruptions, landslides, erosion, and sinkholes.  *Murray*, 203 W. Va. at 484;
23 *Cox*, 217 Ga. App. at 796-97; *Nautilus*, 406 F. Supp. 2d at 902; *Willmar Dev*, 726 F. Supp. 2d at
24 1288.
25     The court in *Murray* held that the exclusion could have been referring to natural events,
26 events caused by man-made events, or events caused by both nature and man.  The *Murray* court
27 thus determined that the exclusion language was ambiguous as to the cause of the event and
28 construed the exclusion narrowly to exclude only damage from earth movement caused by natural

7

events. *Murray*, 203 W. Va. at 485; *see also Nautilus*, 406 F. Supp. 2d at 903-04 (same); *Willmar Dev.*, 726 F. Supp. 2d at 1288-89 (same). The court in *Cox* reasoned that, because the examples of earth movement in the exclusion all arose from natural causes, the term must be construed by the enumerated examples and thus limited the exclusion to earth movement caused by natural events. *Cox*, 217 Ga. App. at 797.

Atain, in contrast, relies on cases that interpreted earth movement exclusions which contained language specifically excluding coverage for events caused by the insured or, even more broadly, by any reason or cause. *See City of Carlsbad v. Ins. Co. of State of Pennsylvania*, 180 Cal. App. 4th 176, 182 (2009) (finding earth movement exclusion which precluded coverage for property damage resulting from land subsidence "for any reason [i.e. cause] whatsoever" applied to *any* causes, including man-made ones); *North River Ins. Co. v. H.K. Constr. Corp.*, 2020 WL 2616574, *5-6 (D. Haw. May 22, 2020) (holding earth movement exclusion which precluded coverage for property damage resulting from earth movement "regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of the insured" applied to earth movement caused by natural phenomena, insured's operations, or any combination thereof); *City of Fullerton v. Ins. Co. of the State of Pennsylvania*, 2014 WL 12588279, at *1, 5 (C.D. Cal. July 30, 2014) (construing broadly policy excluding property damage arising out of land subsidence for "any reason whatsoever"), *aff'd by* 664 Fed. Appx. 618 (9th Cir. 2016).

The Court finds the analysis in *North River* particularly instructive. In *North River*, the court looked to the language of the insurance policy and noted that the exclusion precluded coverage for property damage resulting from earth movement "regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of the insured, that contributes concurrently or in any sequence to the loss or damage." *North River*, 2020 WL 2616574 at *5. The court held that the language unambiguously excluded "property damage resulting from the movement, 'settling, slipping, [or] falling away' of land caused by natural phenomena, [the insured]'s operations, or any combination thereof." *Id.*, 2020 WL 2616574 at *6. The court distinguished the same authority on which JKT relies because the earth

movement exclusions in those cases described types of natural earth movements (such as earthquakes, volcanic eruptions, sinkholes, erosion, and landslides) without any mention of human-related causes of those events. *Id*. The court faulted the insured for not grappling with "this glaring distinction." *Id*.

Similarly, here, the exclusion provisions in the two policies specifically state: "This exclusion applies whether or not the 'earth movement' arises out of any operations by or on behalf of the insured." (Dkt. No. 1, Ex. A.) In fact, this language even more directly pronounces that there is no coverage for property damage resulting from earth movement arising out of the insured's operations. The Court finds that this policy language is unambiguous and is dispositive. In light of this policy language, the insurance policies exclude coverage for property damage arising out of the landslide which the underlying lawsuits accuse JKT of causing. Accordingly, Atain does not owe JKT a duty to defend against those lawsuits.

Because the Court finds that the earth movement exclusion precludes coverage for the claims against JKT, the Court need not address Atain's other, independent, grounds for relief that coverage is also precluded by the professional services exclusion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Atain's motion for summary judgment. Atain is authorized to withdraw from its defense of JKT in the underlying lawsuits in Napa County Superior Court. Additionally, the parties are DIRECTED to meet and confer regarding the reimbursement to Atain for the fees and costs Atain has incurred to date in defending JKT. The parties shall file a stipulation regarding these amounts by no later than June 29, 2020. By June 29, 2020, if the parties cannot reach an agreement, they shall file a joint status update to clearly explain the parties' outstanding disputes on Atain's fees and costs and propose a briefing schedule.

**IT IS SO ORDERED**.

Dated: June 15, 2020

_____
SALLIE KIM
United States Magistrate Judge